IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MILLENNIUM BANK,
UNITED TRUST OF SWITZERLAND S.A.,
UT of S, LLC,
MILLENNIUM FINANCIAL GROUP,
WILLIAM J. WISE,
d/b/a STERLING ADMINISTRATION,
d/b/a STERLING INVESTMENT SERVICES,
d/b/a MILLENNIUM AVIATION,
KRISTI M. HOEGEL, a/k/a KRISTI M. CHRISTOPHER,
a/k/a BESSY LU,
JACQUELINE S. HOEGEL, a/k/a JACQULINE S. HOEGEL,
a/k/a JACKIE S. HOEGEL,
PHILIPPE ANGELONI, and BRIJESH CHOPRA,

Defendants,

and

UNITED T OF S, LLC, STERLING I.S., LLC,
MATRIX ADMINISTRATION, LLC,
JASMINE ADMINISTRATION, LLC, LYNN P. WISE,
DARYL C. HOEGEL, RYAN D. HOEGEL, and
LAURIE H. WALTON,

Relief Defendants.

§ Case No.: 7:09-CV-050-O

**COMPLAINT**

The Securities and Exchange Commission ("Commission") files this Complaint against Millennium Bank, United Trust of Switzerland S.A., UT of S, LLC, Millennium Financial Group ("MFG"), William J. Wise, d/b/a Sterling Administration, d/b/a Sterling Investment Services, d/b/a Millennium Aviation ("Wise"), Kristi M. Hoegel, a/k/a Kristi M. Christopher, a/k/a Bessy

Lu ("Kristi Hoegel"), Jacqueline S. Hoegel, a/k/a Jacquline S. Hoegel, a/k/a Jackie S. Hoegel ("Jackie Hoegel"), Philippe Angeloni, and Brijesh Chopra (collectively, "Defendants"), and, solely for purposes of equitable relief, United T of S, LLC, Sterling I.S., LLC, Matrix Administration, LLC, Jasmine Administration, LLC, Lynn P. Wise, Daryl C. Hoegel, Ryan D. Hoegel, and Laurie H. Walton (collectively, "Relief Defendants"). The Commission alleges:

**SUMMARY**

1. The Commission seeks emergency relief to halt an on-going $68 million Ponzi scheme orchestrated by Wise and Kristi Hoegel and executed through companies they control, including Millennium Bank ("the bank"), its Geneva, Switzerland-based parent, United Trust of Switzerland S.A., and U.S.-based affiliates, UT of S, LLC and MFG. From approximately July 2004 through the present ("the relevant period"), Millennium Bank, acting through Wise, Kristi Hoegel, Jackie Hoegel, Chopra, Angeloni, and others whom they direct, has obtained *at least* $68 million from approximately 375 investors, purportedly to be invested in self-styled "certificates of deposits" by promising return rates up to 321% higher than legitimate bank-issued certificates of deposit ("CDs").

2. The Defendants solicited investors through extensive and fundamental misrepresentations about Millennium Bank's CDs, distributed on the bank's website, www.mlnbank.com, and in advertisements. For example, the bank markets the CDs as safe and secure with guaranteed rates of return. Millennium Bank also falsely claims to be "the benefactor of Swiss banking . . . as well as the vast global investment network that United Trust of Switzerland S.A. has built over the last 75 years." These assurances are false. Contrary to these representations, investors' funds are not safe and secure, because neither Millennium Bank nor UT of S, LLC actually invested any of the money it received from investors. Moreover,

United Trust of Switzerland S.A. is not a bank or a securities dealer. Instead, investor funds were diverted to the Defendants and used for a variety of illegitimate purposes.

3. Defendants, to create the appearance of a legitimate off-shore investment, instruct investors to make checks payable to UT of S, LLC, to purchase the so-called "CDs" and mail the checks to Millennium Bank in St. Vincent and the Grenadines. Once received, the checks are packaged and delivered via federal express or regular mail to UT of S, LLC's office in Napa, California, where they are all electronically deposited by a remote deposit machine into a single UT of S, LLC bank account at Washington Mutual/JP Morgan Chase Bank ("WAMU") ("WAMU Account"). Investors' wired funds are deposited into the same WAMU Account.

4. Bank records establish that, of the known $68 million in investor funds that were deposited into the WAMU Account, the vast majority of those funds were misappropriated by the Defendants, who enriched themselves and paid their personal expenses, funneled them to the Relief Defendants for no apparent consideration or purpose, made small payments to investors, and satisfied investors' liquidation requests with recent deposits of new investors. None of the investor funds were used for any investment purpose whatsoever.

5. The scheme is ongoing, and investor funds are at risk. Millennium Bank continues to solicit new investors through blatant misrepresentations and glaring omissions in its online solicitations and in advertising campaigns targeting high net-worth individuals.

6. The Commission, in the interest of protecting the public from any further unscrupulous and illegal activity, brings this action against Defendants, seeking emergency relief, the appointment of a receiver, temporary, preliminary and permanent injunctive relief, disgorgement of all illicit profits and benefits Defendants have received, plus accrued prejudgment interest and civil monetary penalties. Additionally, the Commission is seeking

disgorgement from the Relief Defendants—persons or entities to which Defendants diverted investor funds—regarding all funds derived, directly or indirectly, from the Defendants' fraudulent conduct.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants have, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. Venue is proper because certain of the acts, practices, transactions and courses of business alleged herein occurred within the Northern District of Texas.

## PARTIES

### A. Defendants

8. Millennium Bank is a bank licensed in St. Vincent and the Grenadines. Its business address is Financial Services Centre, Stoney Ground, Kingstown, St. Vincent and the Grenadines. Millennium Bank offers high-yield "CDs" and other bank services from its website, www.mlnbank.com, and in advertisements. Millennium Bank has never registered an offering of securities with the Commission.

9. United Trust of Switzerland S.A. is a Swiss chartered business entity that wholly-owns Millennium Bank. Millennium Bank's offering materials claim that United Trust of Switzerland S.A. operates "a vast global investment network."

10. UT of S, LLC is a Nevada limited liability company. UT of S, LLC's principal office is located at 3432 Valle Verde Dr., Napa, California. UT of S, LLC was organized in July

2004. During the relevant period, Jackie Hoegel, Wise, and Kristi Hoegel have controlled this entity.

11. Millennium Financial Group ("MFG") is a Raleigh, North Carolina-based business. It was previously an active corporation in North Carolina with a principal office and mailing address of 4020 Westchase Blvd., Suite 100, Raleigh, North Carolina. Its corporate status is listed as "suspended," due to its failure to file the required reports with the State of North Carolina. Wise is MFG's President. MFG was the original domain licensee for www.mlnbank.com.

12. William J. Wise d/b/a Sterling Administration d/b/a Sterling Investment Services d/b/a Millennium Aviation ("Wise"), 58, resides in Raleigh, North Carolina and the Caribbean. At times relevant to this matter, he controlled Millennium Bank, United Trust of Switzerland S.A., UT of S, LLC, MFG, and Relief Defendants Sterling I.S., LLC, Matrix Administration, LLC, and Jasmine Administration, LLC. In 2003, the Pennsylvania Securities Commission ordered Wise to comply with state securities laws in connection with the sale of high return "deposit agreements" offered by a Grenada-based bank.

13. Kristi M. Hoegel a/k/a Kristi M. Christopher a/k/a Bessy Lu, 34, resides in Napa, California. Kristi Hoegel has exercised control over Millennium Bank, United Trust of Switzerland S.A., UT of S, LLC, United T of S, LLC, Sterling I.S., LLC, Matrix Administration, LLC, and Jasmine Administration, LLC. On May 25, 2006, Kristi Hoegel was ordered to cease and desist from selling unregistered securities in the State of Minnesota.

14. Jacqueline S. Hoegel a/k/a Jacquline S. Hoegel and Jackie S. Hoegel, 52, resides in American Canyon, California. Jackie Hoegel is Kristi Hoegel's mother and Daryl Hoegel's

wife. Jackie Hoegel has exercised control over and handled official business for United Trust of Switzerland S.A., UT of S, LLC, United T of S, LLC, and Sterling I.S., LLC.

15. Brijesh Chopra ("Chopra"), 41, place of residence unknown, is Millennium Bank's managing director.

16. Philippe Angeloni ("Angeloni"), 63, resides in Raleigh, North Carolina. Angeloni is a Millennium Bank director, and previously served as an executive vice president at the bank.

**B. Relief Defendants**

17. United T of S, LLC is a Las Vegas, Nevada-based company. United T of S, LLC was organized in July 2004. At various times relevant to this matter, Jackie Hoegel and Wise have been its Manager, and Kristi Hoegel has been its Managing Member.

18. Sterling I.S., LLC ("Sterling") is a Las Vegas, Nevada-based company. Sterling was organized in July 2004. At various times relevant to this matter, Jackie Hoegel and Wise have been its Manager, and Kristi Hoegel has been its Managing Member.

19. Matrix Administration, LLC ("Matrix") is a Las Vegas, Nevada-based company. Matrix was organized in October 2006. Kristi Hoegel is Matrix's Managing Member and Wise is its Manager.

20. Jasmine Administration, LLC ("Jasmine") is a Las Vegas, Nevada-based company. Jasmine was organized in October 2006. Kristi Hoegel is Jasmine's Managing Member and Wise is its Manager.

21. Lynn P. Wise ("Lynn Wise"), 52, resides in Raleigh, North Carolina and the Caribbean. She is married to Wise.

22. Daryl P. Hoegel ("Daryl Hoegel"), 54, resides in American Canyon, California. Daryl Hoegel is Jackie Hoegel's husband.

23. Ryan D. Hoegel ("Ryan Hoegel"), 29, resides in Lincoln, California. Ryan Hoegel is Kristi Hoegel's brother, and does data entry for the Defendants' businesses.

24. Laurie H. Walton ("Walton"), 46, resides in Raleigh, North Carolina.

## FACTUAL ALLEGATIONS

### A. Millennium Bank Offers and Sells Purported Certificates of Deposit on Its Website

25. Millennium Bank's website offers to the public-at-large high-yield CDs with "a guaranteed rate of return to avoid market fluctuations." The so-called CDs promise high return rates that exceed those available for average bank-issued CDs. For example, in February 2009, Millennium Bank's website was promoting a one-year CD paying 7% interest (compounded annually) and a five-year CD paying 7.75% interest (compounded annually). Those rates were 321% and 285% higher, respectively, than the national overnight average for traditional banks. According to Bankrate.com, a well-known aggregator of financial information, as of February 23, 2009, the national overnight average interest rate being offered on a one-year CD was 2.18% and 2.71% for a five-year CD.

26. On August 28, 2003, Millennium Bank's Internet domain name, www.mlnbank.com, was registered with an Australian-based domain registrar. The domain name was licensed to "Millennium Financial Group, 4020 West Chase Blvd., Raleigh, NC." Wise is the President of MFG, and MFG's address at the time matches the registration. On or about November 1, 2006, the registry information for domain name www.mlnbank.com was updated to reflect Millennium Bank as the license holder.

27. On its website, Millennium Bank is marketed as strong, safe, and secure, and backed by United Trust of Switzerland S.A. United Trust of Switzerland S.A., which is prominently featured on Millennium Bank's website and in advertisements, purportedly

"provides Millennium Bank with over 75 years of banking experience, correspondent banking relationships, decades of knowledge in privacy and confidentiality as well as extensive training for our customer services professionals."

28. United Trust of Switzerland S.A. is not a licensed bank or a securities dealer.

29. Visitors to Millennium Bank's website are informed that they can "invest with confidence in Millennium Bank" because: "Millennium Bank is not affected by the global financial crisis…"; Millennium Bank has "a 100% client satisfaction record going back close to ten years when Millennium Bank was founded"; and "Millennium Bank has its own affiliate asset management company with highly seasoned professionals who invest meticulously on a global scale in carefully selected real estate markets and equities as well as viable private investments."

30. Millennium Bank's website provides investors with all the necessary forms to invest, such as the account application, deposit agreement, beneficiary assignment, declaration of funds, and various IRA-related forms. The investment forms define or refer to the bank as "UT of S / MB" or just "UT of S." Investors needing assistance opening an account or seeking additional information about Millennium Bank products can complete a "Help Me Invest Form" online, which is emailed to the bank.

31. The only cautionary language on Millennium Bank's website is its acknowledgement that bank deposits are not protected by FDIC insurance or any insurance plan. Nevertheless, the bank claims that customer deposits are "safeguarded" by strict oversight by the International Financial Services Authority of St. Vincent and the Grenadines ("IFSA").

**B. Millennium Bank Promotes Its CDs in Advertisements**

32. Millennium Bank advertises its high-yield no-risk CDs in magazines and on Internet banner ads. For instance, as of March 2009, Millennium Bank was running a "promotional feature" and two-page, bi-fold advertisement in *The Wealth Collection* magazine, a bi-annual magazine that "covers the latest in luxury lifestyle trends, bespoke investment opportunities, property and wealth management." The promotional feature, titled *Offshore Advantage*, explores how offshore banks can offer their clients higher interest rates than large domestic banks.

33. In *Offshore Advantage*, Angeloni is quoted as saying, "We aim to be productive and efficient every day because then we can be as competitive as possible. Being as competitive as we can means offering the highest rate of return to our clients. Offering our clients higher interest rates is our only competitive edge and we work very hard to get there." The promotional feature goes on to offer CDs with interest rates up to 8%. Millennium Bank's two-page, bi-fold advertisement that appears a page earlier, offers CDs with interest rates up to 7.5%.

34. Millennium Bank was previously referenced in the March 2008 edition of *The Wealth Collection*. The promotional piece, titled *Global Wealth Incubators*, which is currently available online, quotes Chopra describing Millennium Bank's approach "to reach investors" as "proactive." Chopra is also quoted as saying, "We have to work hard, very hard to achieve success. It is that ethic which inspires the confidence of our worldwide clients."

35. A Millennium Bank advertisement featured in *Wealth Management Agenda*, a lavish lifestyle magazine catering to high net-worth individuals, offers investors the opportunity to "Invest in Peace" and earn interest rates as high as 8.5% on a five-year CD. The advertisement states, "Once you have invested in one of our accounts, your rate of return is locked in and you will benefit from the terms you have chosen."

36. Millennium Bank also ran banner ads promoting its high-yield CDs on the website of *Haute Living*, a lifestyle magazine designed for high net-worth individuals. From May 2008 through March 2009, Millennium Bank's banner advertisements on *Haute Living's* website received over 197,000 impressions. An "impression" occurs when an ad is present on a webpage being viewed by a visitor to the website.

37. Millennium Bank's advertisements can currently be viewed online, with the exception of the *Haute Living* banner ads.

**C. Millennium Bank Targets U.S. Investors In Its Unregistered Offering**

38. Millennium Bank's CD offering targets U.S. investors. Millennium Bank's website is published in English, as well as thirteen other languages, and lists monies in U.S. dollars. Millennium Bank's offering materials provide U.S. investors (as well as Canadian investors) with a special toll-free number to contact the bank. Millennium Bank advertised its high-yield CDs on the website of Miami, Florida-based *Haute Living* magazine.

39. Ultimately, approximately 375 investors from all over the U.S. invested in Millennium Bank's CDs, including investors from this judicial district.

40. No registration statement was filed with the Commission or was in effect as to Millennium Bank, United Trust of Switzerland, S.A., or UT of S, LLC.

**D. Investor Funds Are Deposited Into a Domestic Bank Account and Used to Make Small Payments to Earlier Investors and Enrich the Proposed Defendants and Relief Defendants**

41. At least $68 million of investor funds were deposited into UT of S, LLC's WAMU bank account since it was opened in July 2004. The WAMU account was opened in Las Vegas, Nevada by Kristi Hoegel and Jackie Hoegel. Currently, Wise and Kristi Hoegel are the authorized signatories on the account.

42. Deposits into the account consist of wire credits and check deposits. The investor checks typically listed "UT of S," "United Trust of Switzerland," or "United Trust of Switzerland S.A.," as the payee. The memo lines of the checks often referenced "CD" and an interest rate ranging from 6.75% to 10%, Millennium Bank, the name of a Millennium Bank CD salesman, and/or the term "investment."

43. A significant portion of the checks deposited into the WAMU account were deposited by remote deposit machines stationed at UT of S, LLC's office at 3432 Valle Verde Dr., Napa, California at the request of Kristi Hoegel.

44. A remote deposit machine allows a bank customer to deposit checks with a depository bank from a remote location (e.g., the customer's office). An image (front and back) of the check is electronically transmitted to the depository bank, resulting in a credit to the customer's account.

45. Investor checks sent to the bank's offshore address were packaged offshore and shipped to UT of S, LLC's Napa, California office via mail/Federal Express. Federal Express shipping records reflect shipments to 3432 Valle Verde Dr., Napa, California from Millennium Bank.

46. During 2008 and 2009, Wise, Jackie Hoegel, Chopra, and Angeloni all received and/or shipped packages billed to the Millennium Bank Federal Express account. In the four month period from October 1, 2008 through February 28, 2009, UT of S, LLC paid over $24,000 in Federal Express shipping costs.

47. During the relevant period, all investor funds were commingled in the UT of S, LLC account at WAMU, used for operating expenses of UT of S, LLC, and subsequently

disbursed to: Wise, Kristi Hoegel, Brijesh Chopra, and Philippe Angeloni; Wise and Kristi Hoegel's relatives; and entities Wise and Kristi Hoegel control.

48. Specifically, the majority of investor funds were used by, and/or transferred to the following individuals and entities in *at least* the following approximate amounts:

a. Wise (including entities under his sole control, Sterling Administration, Sterling Investment Services, and Millennium Aviation): $12.3 million

b. Kristi Hoegel: $965,000

c. Jackie Hoegel (Kristi Hoegel's mother): $854,000

d. Brijesh Chopra: $90,000

e. Philippe Angeloni: $20,000

f. Lynn Wise (Wise's wife): $1.68 million

g. Daryl Hoegel (Jackie Hoegel's husband): $130,000

h. Ryan Hoegel (Kristi Hoegel's brother): $34,000

i. Laurie Walton: $323,000

j. United T of S, LLC: $225,000

k. Sterling I.S., LLC: $504,000

l. Matrix Administration, LLC: $476,000

m. Jasmine Administration, LLC: $18,000

n. Millennium Financial Group: $20,000

o. United Trust of Switzerland, S.A.: $2.6 million

p. UT of S, LLC (operating expenses): $1.1 million.

Approximately $3 million was paid back to investors from October 2008 through February 2009.

49. UT of S, LLC's bank records establish that: (1) no investor funds were used for legitimate banking or investment activities; (2) investor funds were commingled in the account;

(3) money movement in the WAMU account included transfers to and from each of the Defendants, linking all of them to the scheme; (4) millions of dollars of new investor monies were used to make apparent Ponzi payments to earlier investors; (5) each of the individual Defendants diverted investor funds for their personal use (totaling approximately $14 million); (6) each of the Relief Defendants received from tens of thousands to millions of dollars of investor funds (totaling at least approximately $3.3 million) for no consideration; and (7) investor funds were also used to pay at least $2.8 million in credit card expenses, $820,000 in auto expenses, $870,000 in aviation expenses, and $90,000 in wine expenses (totaling approximately $4.6 million).

**E. Additional On-Going Lulling Activities**

50. Millennium Bank's promotional feature in *The Wealth Collection,* which is currently available on-line, attempts to quell suspicions over its high-yield CDs and lull current investors. It specifically states: "Millennium Bank presently offers up to 8% interest on certificates of deposit and 4.1% on its daily interest savings account. To most people, these rates appear to be high, leading many to suspect that something is not right. That is a natural human reaction. But nothing could be further from the truth. Millennium Bank has been in business for eight years and is presently one of the most successful private banks in the Caribbean."

## CAUSES OF ACTION

## FIRST CLAIM

## Violations of Section 10(b) of the Exchange Act and Rule 10-5

51. Paragraphs 1 through 50 are realleged and incorporated by reference.

52. Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate

commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

53. As a part of and in furtherance of their scheme, defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54. Defendants made the referenced misrepresentations and omissions knowingly or with gross recklessness disregarding the truth.

55. For these reasons, Defendants have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM

## Violations of Section 17(a) of the Securities Act

56. Paragraphs 1 through 50 are realleged and incorporated by reference.

57. Defendants, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or

omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

58. As part of and in furtherance of this scheme, defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59. Defendants made the referenced misrepresentations and omissions knowingly or with gross recklessness disregarding the truth. Defendants, in addition, were negligent in connection with their offer and sale of the securities alleged in this Complaint.

60. For these reasons, Defendants have violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

61. Paragraphs 1 through 50 are realleged and incorporated by reference.

62. Defendants, directly or indirectly, singly or in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of

transportation and communication in interstate commerce and of the mails to offer to sell such securities.

63. As described in paragraphs 1 through 50 above, no registration statements were ever filed with the Commission or otherwise in effect with respect to these transactions.

64. By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM

## Claims Against the Relief Defendants as Custodians of Investor Funds

65. Paragraphs 1 through 50 are realleged and incorporated by reference.

66. Relief Defendants received, directly or indirectly, funds and/or other benefits from the Defendants, which either are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein and to which they have no legitimate claim to these funds and property.

67. Relief Defendants obtained the funds and property as part of and in furtherance of the securities violations alleged and under circumstances in which it is not just, equitable or conscionable for them to retain the funds and property, and accordingly, they have been unjustly enriched.

68. The Commission is entitled to an order requiring that Relief Defendants disgorge these funds and property plus prejudgment interest thereon.

## RELIEF REQUESTED

Plaintiff Commission respectfully requests that this Court:

(1) Permanently enjoin Defendants and their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the

injunction by personal service or otherwise, from violating, directly or indirectly Section 10(b) [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] and Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)];

(2) Order Defendants to disgorge an amount equal to the funds and benefits they obtained as a result of the violations alleged, plus prejudgment interest on that amount;

(3) Order Relief Defendants to disgorge an amount equal to the funds and benefits they obtained directly or indirectly, from the Defendants, which either are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein;

(4) Order civil penalties against Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for their securities law violations; and

(5) Order such further relief as this Court may deem just and proper.

Dated: March 25, 2009

Respectfully submitted,

*s/ Jennifer D. Brandt*

JENNIFER D. BRANDT
Texas Bar No. 00796242
ROBERT LONG
Arizona Bar No. 019180
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6442 (jb)
Fax: (817) 978-4927
*brandtj@sec.gov*
ATTORNEYS FOR PLAINTIFF

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**
**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

**Defendants**
**MILLENNIUM BANK, ET AL.**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF__________________
(EXCEPT IN U.S. PLAINTIFF CASES)

**County of Residence of First Listed Defendant**: **Napa County, CA**
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
**Jennifer D. Brandt**
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6442

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ **1 U.S. Government Plaintiff**
- ☐ **3 Federal Question (U.S. Government Not a Party)**
- ☐ **2 U.S. Government Defendant**
- ☐ **4 Diversity (Indicate Citizenship of Parties in Item III)**

**III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | PTF | | PTF | PTF |
|---|---|---|---|---|---|
| **Citizen of This State** | ☐ 1 | ☐ 1 | **Incorporated or Principal Place of Business In This State** | ☐ 4 | ☐ 4 |
| **Citizen of Another State** | ☐ 2 | ☐ 2 | **Incorporated and Principal Place of Business in Another State** | ☐ 5 | ☐ 5 |
| **Citizen or Subject of a Foreign Country** | ☐ 3 | ☐ 3 | **Foreign Nation** | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (*PLACE AN "X" IN ONE BOX ONLY*)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ **153** Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ **350** Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ **380** Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 156
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copy rights
- ☐ 830 Patient
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395FF)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 810 Selective Service
- ☒ 850 Securities Commodities/ Exchange
- ☐ **875** Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**V. ORIGIN** (*PLACE AN "X" IN ONE BOX ONLY*)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING **(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):**
Brief Description of cause:
Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), 77q(a)(1),(2), (3)]; and Section 10(b) of the Securities Exchange Act of 1934, [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND** ☐ YES ☒ NO

**VII. RELATED CASE(S)** (See Instructions):
**IF ANY** JUDGE ________________________________ DOCKET NUMBER ______________________________________

**DATE**
**March 25, 2009**

SIGNATURE OF ATTORNEY OF RECORD
*/s/Jennifer D. Brandt*

**FOR OFFICE USE ONLY**
Receipt #____________ AMOUNT ______________ APPLYING IFP ____________ JUDGE __________________ MAG. JUDGE ______________________