IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
|   ) | |
|   Plaintiff, ) | |
|   ) | |
| v.   ) | |
|   ) | |
| MILLENNIUM BANK, et al., ) | Case No. 7:09-cv-050-O |
|   ) | |
|   Defendants. ) | |
| _____ ) | |

**JACQULINE AND CHRIS HOEGEL'S RESPONSE TO PLAINTIFF'S MOTION
FOR MONETARY REMEDIES AND ENTRY OF FINAL JUDGMENT
(DOCKET NO. 283)**

Jacquline and Chris Hoegel hereby respond to the SEC's Motion for Monetary Remedies and Entry of Final Judgment (Docket No. 283).

The SEC's motion appears to be based on inaccurate facts regarding what assets the Receiver collected and obtained from the Hoegels.

First, the motion states that the Receiver obtained approximately $95,121.01 from bank accounts and from cash held in a safe. The Hoegels respectfully request an itemized accounting of the amounts obtained from each bank account and how much cash was in the safe.

Second, many more assets were collected and sold that should be counted against any disgorgement amount. In fact, the Report of the Receiver dated December 4, 2009 states, "The Hoegel Defendants' personal property items were inventoried and liquidated

1

in accordance with Court order." (Docket No. 115, p. 17; see also p. 22: "The sale of the Hoegels' personal property assets was accomplished through auction(s), certain personal property of negligible value was released to the Hoegels, those assets which had no value or equity to the Estate were surrendered to 1ien holders, and the real property was sold in accordance with the Court's orders. All proceeds from these sales will be, or have been, deposited in the Receivership account.") The only items that were returned are those listed in Exhibits A and B to Docket No. 81. Assets that were sold include:

1. Home in American Canyon, California (see Docket Nos. 76 and 78 authorizing an expedited sale);

2. Chris Hoegel's sports memorabilia collection. As the Receiver's motion to sell this collection states:

> After his appointment as Receiver and pursuant to the responsibilities with which he is charged, the Receiver took control and possession of certain real and personal property owned by the Defendants and Relief Defendants, including a sports memorabilia collection (the "Sports Collection"), which is personal property that constitutes a Receivership Asset within the meaning of this Court's March 27, 2009 Order Appointing Receiver. The Sports Collection is the result of over 50 years of collection by Daryl "Chris" Hoegel, a Relief Defendant in this case. The Sports Collection includes, but is not limited to, hundreds of newspaper clippings, over fifty autographed baseballs, other autographed media, and sports related artwork and prints.

(Docket No. 75, granted by order at Docket No. 79). This collection included:

   a. Approximately 23 "500 home run club" signed baseballs, including one by Barry Bonds used in a game on August 7, 2007, and another

      28 big-name signed baseballs, given to Patrick Murphy of the Receiver's office in two tubs on March 28, 2009 at the Lincoln home.

  b. Approximately 50 signed baseballs, 23 signed pictures framed by the "500 home run club," and miscellaneous memorabilia, given to the Harvey Clars auctioneers from the American Canyon home.

  c. Several large signed and framed sports prints, including Stephen Holland's Michael Jordan, Ken Griffey, Jr., Nolan Ryan, Dan Marino, Jerry Rice, and Frank Thomas, among others. These items were seized from the Napa office on March 27, 2009.

3. Chris Hoegel's Mercedes SL 500, which was sold according to the Receiver (see Docket No. 115, p. 15);

4. 18k gold Omega Constellation 95 men's watch, ID No. 11121.30.00. This watch was seized from the safe at the Lincoln residence;

5. Approximately $1,300 to $1,500 in cash seized from Chris Hoegel's wallet on March 28, 2009;

6. Personal property from the American Canyon home resold by Harvey Clars auctioneers for $43,569.32, according to the Receiver (see Docket No. 115, p. 15);

7. Personal property (couch, etc.) in the American Canyon home that was purchased by the property buyer (Anaka O'Kelly) for approximately $2,000, according to the realtor, Janet Moss; and

8. Personal property from the Lincoln home purchased from a private party through Allison Byman.

The Receiver knows the amounts collected for these items; the Hoegels do not. Regardless, because the SEC's disgorgement amount does not include many easily ascertainable facts known to the SEC and the Receiver, it is not "reasonably approximated."

Third, Ms. Hoegel did not fully understand that by consenting to the judgment and injunction at Docket No. 22 in April 2009, she was also agreeing to admit the allegations in the Complaint for purposes of a motion for monetary penalties like this one. In fact, the first paragraph states that she had "consented to entry of this Agreed Judgment <u>without admitting or denying the allegations of the Complaint</u>." (Docket No. 22, emphasis added.) Since February 2012, Ms. Hoegel has been defending criminal charges based on the same alleged conduct and has always maintained her innocence. At that time, she was charged (with co-defendant William Wise) in the Northern District of California with 22 counts of conspiracy, mail fraud, wire fraud, false tax returns, obstruction, and false statements (Case No. 3:12-cr-00111-EMC). William Wise almost immediately plead guilty under a cooperation deal, and was recently sentenced to 21 years in prison. On November 7, 2013, the government dropped all charges against Ms. Hoegel. On June 19, 2014, the government re-filed just the false tax return charges in the Eastern District of California for the years 2005 through 2008 (Case No. 2:14-cr-00168-JAM).

Fourth, the SEC has already secured a judgment against the Hoegels for $21,753.89 in related Case No. 7:11-cv-00031 (Roper v. Abbott, et al.). (See Docket No.

352, Final Judgment entered May 8, 2013.) The Court should take this into account in deciding the SEC's motion for yet another monetary judgment.

Finally, and perhaps most importantly, all of the Hoegels' bank accounts and assets were seized in March 2009. They are currently living rent-free in a trailer on land owned by friends in Pleasant Grove, California. They have very limited income and no savings; all monthly income is used to pay for modest living expenses. As such, it is unnecessary for the Court to impose a high penalty to ensure an appropriate deterrent effect given their current financial situation. See *SEC v. Rubin*, No. 91 CIV. 6531(MBM), 1993 WL 405428, *7 (S.D.N.Y Oct. 8, 1993) (imposing $1,000 penalty against defendant who was determined to be impecunious); see also *SEC v. Mohn*, No. 02-74634, 2005 WL 2179340, *9 (E.D. Mich. Sep. 9, 2005) (waiving civil penalties against defendant where the Court found it unlikely that the SEC could collect any civil penalties given defendant's net worth and his speculative and uncertain future income potential). Respectfully submitted.

Date: June 5, 2015                              _____/s/_____
                                                Jacquline Hoegel


Date: June 5, 2015                              _____/s/_____
                                                Chris Hoegel